# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RICHARD LEE DAVIS (#393523)**　　　　　　　　　　**CIVIL ACTION**

**VERSUS**

**19-558-SDD-RLB**

**DARREL VANNOY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 21, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RICHARD LEE DAVIS (#393523)**                                        **CIVIL ACTION**

**VERSUS**

                                                                                          **19-558-SDD-RLB**

**DARREL VANNOY, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA" ) against Warden Darrel Vannoy and Secretary James LeBlanc, complaining that his constitutional rights have been violated due to deliberate indifference to his serious medical needs. He prays for monetary and injunctive relief.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is proceeding *in forma pauperis* or is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995).

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to

dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made any time, before or after service or process and before or after an answer is filed, if the court determines that the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2) and *Green v. McKaskle*, 788 F.2d 1116, 1999 (5th Cir. 1986).

The plaintiff alleges the following in his Complaint: In December of 2007 the plaintiff was seen by Dr. Billy Cannon who determined that the plaintiff needed extensive dental work. Since root canals were not being done at LSP at the time, Dr. Cannon recommended removing the plaintiff's teeth and having him fitted with dentures. The plaintiff then had several appointments with Dr. Hill to extract his teeth. It was then determined that the plaintiff had a bone ridge that would need to be ground down. The plaintiff was seen by an oral surgeon and the procedure was completed.

After the plaintiff healed, Dr. Hill began the process of fitting the plaintiff for dentures. Over time and due to several complaints of the dentures not fitting well, the plaintiff was seen by Dr. Hebert. Dr. Hebert made some adjustments and finally determined it was the best that the dentures would fit since too much bone had been ground away.

In 2017, the plaintiff filed his first grievance regarding his dentures. In response, the plaintiff was referred to Dr. Anderson. After making several sets of dentures and trying several types of liners it was again determined that the plaintiff did not have enough bone left for dentures to fit properly.

The plaintiff still does not have a set of properly fitting dentures that he can eat with which causes digestive problems since the plaintiff cannot chew his food. The plaintiff is being provided with protein powder two times per day, but he refuses it because it is opened by security. The plaintiff has not been provided with a soft food diet; therefore, he must either go without eating, injure his gums eating the food provided to him, or spend his own money to purchase foods he can eat without chewing.

As to the plaintiff's claims regarding his dentures, a prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

In the instant matter, according to the plaintiff's allegations, the plaintiff has been provided with an abundance of dental treatment. Unfortunately, that treatment has failed but

failed treatment does not give rise to a claim of deliberate indifference. The plaintiff has not alleged that the defendants have denied him treatment, purposefully provided him with improper treatment, or ignored his medical complaints. To the contrary, the plaintiff alleges that he has been seen by at least four dentists and one oral surgeon, and that multiple pairs of dentures have been made and adjusted, and multiple types of liners have been tried albeit with no success. Despite the lack of success in fitting the plaintiff with dentures, the facts alleged by the plaintiff do not state a claim for deliberate indifference to his serious medical needs.

Turning to the plaintiff's ADA claim regarding the failure to provide him with a soft diet, to whatever extent, if any, that the defendants are being sued in their individual capacities, the plaintiff's ADA claims against them must be dismissed. The Supreme Court in *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998), recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities. The term "public entity" in Title II does not include individuals; therefore, individual defendants cannot be held personally liable for violations of Title II of the ADA. *Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), *as stated in Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

As to any official capacity claims the plaintiff may be asserting against the defendants under the ADA, the plaintiff has failed to allege facts that state a cause of action under this statute. "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of

the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Id.* at 213.

In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

The plaintiff's allegations in the instant case do not meet this 3-part test *vis-a-vis* the defendants. The plaintiff does not assert that he was excluded from participation in or denied the benefits of any prison services, programs or activities. The plaintiff does not allege that he is being discriminated against in any manner, much less by reason of his disability. To the contrary, the plaintiff's allegations concern a failure to attend to his medical needs, which does not alone violate the ADA. *See Nottingham v.. Richardson,* 499 F. App'x. 368, 377 (5th Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners'").

While the failure to provide the plaintiff with a soft diet could constitute deliberate indifference, the plaintiff has not alleged that defendants Vannoy and LeBlanc were personally involved in any decision regarding the plaintiff's diet. In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

The plaintiff has made no allegations of personal involvement on the part of defendants Vannoy and LeBlanc with regards to decisions on his medical care. Furthermore, based upon the documents attached to the plaintiff's Complaint, it appears that the plaintiff's claim regarding the provision of a soft diet amounts to no more than a disagreement with his course of treatment prescribed by a dentist. In a grievance dated October 20, 2018, the plaintiff requested nutritional and caloric supplements until his dentures could be properly fitted. In the Second Step response

it is noted that "the dentist" issued a protein supplement for the plaintiff to consume until a solution is found regarding his dentures. *See* R. Doc. 1-1, p. 5 and 9. As stated in his Complaint, the plaintiff refuses the protein supplement and would prefer a soft diet instead. As such, the plaintiff has failed to allege facts which would state a claim under the ADA or for deliberate indifference to his serious medical needs with regards to his claim regarding the failure to provide a soft diet.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that this action be dismissed, with prejudice, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[1]

Signed in Baton Rouge, Louisiana, on October 21, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."